**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**

| | |
|---|---|
| Jesus David Portillo, <br><br> Plaintiff, <br><br> -against- <br><br> Equifax Information Services, LLC; <br> Experian Information Solutions, Inc.; <br> Trans Union, LLC; and <br> Wells Fargo Bank N.A., <br><br> Defendant(s). | Case No.: 3:23-cv-00270 <br><br> **CLASS ACTION COMPLAINT** <br> **DEMAND FOR JURY TRIAL** |

Plaintiff Jesus David Portillo, by and through counsel, as and for this Class Action Complaint against Defendants Equifax Information Services, LLC, ("Equifax"); Experian Information Solutions, Inc. ("Experian"); Trans Union, LLC ("Trans Union") (Equifax, Experian and Trans Union each a "Bureau" and collectively "Bureaus"), and Wells Fargo Bank N.A. ("Wells Fargo" or "Furnisher"), individually and on behalf of a class of all others similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure, respectfully sets forth, complains and alleges, upon information and belief, the following:

1.      Plaintiff brings this class action individually and on behalf of a class of all others similarly situated for damages arising from the Defendants' violations of 15 U.S.C. § 1681 *et seq.*, the Fair Credit Reporting Act ("FCRA").

## JURISDICTION AND VENUE

2.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as well as 15 U.S.C. § 1681p *et seq*.

3.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) as the acts and transactions occurred here, Plaintiff resides here, and Defendants transact business here.

## PARTIES

4.      Plaintiff is a resident of the State of Texas, County of El Paso.

5.      At all times material hereto, Plaintiff was a "consumer" as said term is defined under 15 U.S.C. § 1681a(c).

6.      Defendant Equifax Information Services LLC, is a consumer reporting agency defined by 15 U.S.C. § 1681a (f) and conducts substantial and regular business activities in this judicial district.

7.      Equifax is a Georgia corporation registered to do business in this State.

8.      Equifax may be served with process c/o Corporation Service Company, 211 E. 7th Street, Suite 620 Austin, TX 78701.

9.      Equifax is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis and is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers to third parties for the purpose of furnishing consumer reports, as defined under 15 U.S.C. § 1681a (p).

10.      Equifax, Inc., the parent company for Equifax, is traded on the on the New York Stock Exchange under the symbol EFX.

11.      In July 2023 Equifax, Inc. had a market cap of more than $27 billion.

12.      Defendant Experian Information Solutions, Inc., is a consumer reporting agency as defined by 15 U.S.C. § 1681a(f) and conducts substantial and regular business activities in this judicial district.

13.      Experian is an Ohio corporation registered to do business in this State.

14.      Experian may be served with process c/o C T Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201.

15.      Experian is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis and is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers to third parties for the purpose of furnishing consumer reports, as defined under 15 U.S.C. § 1681a (p).

16.      At all times material hereto, Experian disbursed such consumer reports to third parties under a contract for monetary compensation.

17. Experian PLC, the parent company for Experian, is traded on the London Stock Exchange under the symbol EXPN.

18. In July 2023 Experian PLC had a market cap of more than $27 billion.

19. Defendant Trans Union, LLC, is a consumer reporting agency as defined by 15 U.S.C. § 1681a (f) and conducts substantial and regular business activities in this judicial district.

20. Trans Union is a Delaware corporation registered to do business in this State.

21. Trans Union may be served with process c/o The Prentice-Hall Corporation System, Inc., 211 E. 7th Street, Suite 620, Austin TX 78701.

22. Trans Union is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis and is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers to third parties for the purpose of furnishing consumer reports, as defined under 15 U.S.C. § 1681a (p).

23. At all times material here to Trans Union disbursed such consumer reports to third parties under a contract for monetary compensation.

24. Trans Union, the parent company of Defendant Trans Union, is traded on the New York Stock Exchange under the symbol TRU.

25. In July 2023 Trans Union had a market cap of more than $15 billion.

26. Defendant Wells Fargo is a person who furnishes information to consumer reporting agencies under 15 U.S.C. § 1681s-2.

27. Wells Fargo may be served with process at 550 S 4th Street, # N9310076 Minneapolis, MN 55415-1529.

## CLASS ALLEGATIONS

28. Plaintiff brings this claim on behalf of the following class, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3).

29. As to the Bureaus, the "CRA Class" consists of:

    a. all individuals with addresses in the State of Texas;

    b. containing at least one inquiry on the individual's credit report or credit file;

3

  c.  for whom a Bureau noted as deceased;

  d.  regarding an individual who, at the time, was not listed on the Death Master File as deceased;

  e.  which deceased notation was listed on or after a date two (2) years prior to the filing of this action and on or before a date twenty-one (21) days after the filing of this action.

30.  As to Wells Fargo, the "Wells Fargo Class" consists of:

  a.  all individuals with addresses in the State of Texas;

  b.  that disputed all or part of their Wells Fargo account information to one or more of the Bureaus;

  c.  which dispute was then forwarded to Wells Fargo;

  d.  for whom Wells Fargo reported to one or more of the Bureaus after the following 30 days that the consumer was deceased;

  e.  regarding an individual who, at the time, was not listed on the Death Master File as deceased;

  f.  on or after a date two (2) years prior to the filing of this action and on or before a date twenty-one (21) days after the filing of this action.

31.  The identities of all class members are readily ascertainable from the records of Defendants and those companies and entities on whose behalf they report credit.

32.  Excluded from the Plaintiff Classes are the Defendants and all officers, members, partners, managers, directors and employees of the Defendants and their respective immediate families, and legal counsel for all parties to this action, and all members of their immediate families.

33.  There are questions of law and fact common to the Plaintiff Classes, which common issues predominate over any issues involving only individual class members. The principal issue is whether the Defendants' reporting of living consumers as deceased violates 15 U.S.C. § 1681 et seq.

34.    The Plaintiff's claims are typical of the class members, as all are based upon the same facts and legal theories. The Plaintiff will fairly and adequately protect the interests of the Classes defined in this complaint. The Plaintiff has retained counsel with experience in handling consumer lawsuits, complex legal issues, and class actions, and neither the Plaintiff nor Plaintiff's attorneys have any interests, which might cause them not to vigorously pursue this action.

35.    This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community interest in the litigation:

     a.  **Numerosity:** The Plaintiff is informed and believes, and on that basis alleges, that the Class(es) defined above are so numerous that joinder of all members would be impractical.

     b.  **Common Questions Predominate:** Common questions of law and fact exist as to all members of the Class(es) and those questions' predominance over any questions or issues involving only individual class members. The principal issue is whether the Defendants' reporting of living consumers as deceased violates 15 U.S.C. § 1681 *et seq*.

     c.  **Typicality:** The Plaintiff's claims are typical of the claims of each class's members. The Plaintiff and all members of the Class(es) have claims arising out of the Defendants' common uniform course of conduct complained of herein.

     d.  **Adequacy:** The Plaintiff will fairly and adequately protect the interests of the class members insofar as Plaintiff has no interests adverse to the absent class members. The Plaintiff is committed to vigorously litigating this matter. Plaintiff has also retained counsel experienced in handling consumer lawsuits, complex legal issues, and class actions. Neither the Plaintiff nor his counsel have any interests which might cause them not to vigorously pursue the instant class action lawsuit.

e. **Superiority:** A class action is superior to the other available means for the fair and efficient adjudication of this controversy because individual joinder of all members would be impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum efficiently and without unnecessary duplication of effort and expense that individual actions would engender.

36.     Certification of a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that the questions of law and fact common to members of the Class(es) predominate over any questions affecting an individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

37.     Depending on the outcome of further investigation and discovery, Plaintiff may, at the time of class certification motion, seek to certify a class(es) only as to particular issues pursuant to Fed. R. Civ. P. 23(c)(4).

**FACTUAL ALLEGATIONS**

38.     Plaintiff incorporates the above allegations as if set forth here.

39.     Plaintiff allegedly has or had an account with Wells Fargo, account number beginning in 442644… ("Account").

40.     On information and belief, on a date better known to each Bureau, it prepared and issued consumer reports concerning the Plaintiff that included the Account.

41.     Plaintiff is not exactly certain of the precise timeline of events here and alleges the following to the best of his knowledge and belief.

42.     It appears at some points as far back as July 2021 Defendants have been reporting Plaintiff as deceased.

43.     Certainly, by March 2023 Plaintiff was being reported as deceased by Experian and Trans Union.

44.     The Account was listing Plaintiff as "Deceased".

45.    Due to this deceased marking, each Bureaus were also showing Plaintiff as not having a credit score.

46.    Plaintiff is not deceased.

47.    Plaintiff is very much alive.

48.    The reporting of him being deceased is inaccurate.

49.    Upon information and belief, the Social Security Administration (SSA) provides the Department of Commerce's National Technical Information Service (NTIS) a public file of death information.

50.    NTIS distributes the public file of death information, also known as the public Death Master File (DMF), to other agencies and private organizations, including consumer reporting agencies.

51.    Upon information and belief, each Bureau has a data exchange agreement with the SSA and/or NTIS to receive updated death information.

52.    Upon information and belief, Wells Fargo has the ability to receive the same or similar updated death information.

53.    Upon information and belief, each Defendant failed to cross-check the DMF to verify whether Plaintiff was a part of the catalog of social security numbers that belong to deceased individuals.

54.    Had each Bureau maintained reasonable procedures it would have realized that Plaintiff is not deceased.

55.    Had each Bureau attempted to timely verify if Plaintiff was deceased, it would have realized he was in fact alive.

56.    Had Wells Fargo attempted to timely verify if Plaintiff was deceased, it would have realized he was in fact alive.

57.    Each Bureau had been reporting this inaccurate information through the issuance of false and inaccurate credit information and consumer reports that it has disseminated to various persons and credit grantors, both known and unknown.

58.     Upon information and belief, Furnisher was reporting Plaintiff as deceased to each Bureau.

59.     The information described above, furnished by Wells Fargo and published by each Bureau was inaccurate.

60.     On or about March 17, 2023, Plaintiff sent each Bureau a dispute letter disputing its reporting of Plaintiff as deceased and the inaccurate information being reported on his Wells Fargo account ("First Dispute").

61.     On or about April 3, 2023 Plaintiff sent each Bureau a dispute letter disputing its reporting of Plaintiff as deceased and the inaccurate information being reported on his Wells Fargo account ("Second Dispute")

62.     On or about April 22, 2023, Plaintiff sent each Bureau a dispute letter disputing its reporting of Plaintiff as deceased and the inaccurate information being reported on his Wells Fargo account ("Third Dispute").

63.     On or about May 13, 2023, Plaintiff sent each Bureau a dispute letter disputing its reporting of Plaintiff as deceased and the inaccurate information being reported on his Wells Fargo account ("Fourth Dispute") (the First Dispute, Second Dispute, Third Dispute, and Fourth Dispute, each a "Dispute", and collectively "Disputes").

64.     In each Dispute, Plaintiff explained that he was not deceased.

65.     Despite one or more of the Dispute(s), Plaintiff was being reported incorrectly as deceased by each Bureau.

66.     Upon receipt of the Dispute(s) each Bureau failed to conduct a reasonable investigation.

67.     Upon receipt of each Dispute from each Bureau, Furnisher failed to conduct a reasonable investigation.

68.     The opposite occurred.

69.     For example, instead of removing the death notice, Equifax added it.

70.    In response to Plaintiff's Dispute, Defendant Equifax began reporting inaccurate information that Plaintiff was deceased, responding to Plaintiff that "per your request, a death notice has been added to the deceased consumer's credit file."

71.    Yet Plaintiff never requested that he be reported as deceased – he was alive and demanding he be reported as such.

72.    Experian responded that because Wells Fargo had confirmed to Experian that Plaintiff was deceased, Experian was refusing to acknowledge that Plaintiff was very much alive and would continue reporting him as deceased.

73.    It is unclear to Plaintiff exactly what happened with the deceased reporting between March and May 2023.

74.    It appears that In March 2023 Plaintiff did not even have a credit score with Experian and TransUnion, apparently because he was marked a deceased.

75.    At some point during this time, it appears that Experian and TransUnion moved the deceased notation from the Well Fargo account and placed it instead elsewhere on Plaintiff's credit report.

76.    But they still reported Plaintiff as deceased.

77.    Finally, after all the Disputes, in late May 2023, Wells Fargo finally acknowledged they were incorrect in reporting Plaintiff as deceased.

78.    They attempted to pin the blame on a third-party vendor but even they were "unable to determine exactly where" the deceased reporting originated.

79.    Yet Wells Fargo continuously reported Plaintiff as deceased, by their admission, as far back as June 2021, to each Bureau.

80.    It appears that in mid-late May 2023 or early June 2023, after Plaintiff disputed it at least four times, all Defendants finally removed the deceased marking.

81.    Despite the falsity and their knowledge thereof, Defendants continued to report false and inaccurate adverse information on the consumer report of the Plaintiff.

82.    A reasonable investigation by each Bureau would have revealed that Plaintiff was not deceased and that he was being incorrectly reported.

83.    A reasonable investigation by Furnisher would have revealed that Plaintiff was not deceased and that he was being incorrectly reported.

84.    Each Bureau violated 15 U.S.C. § 1681i (a)(1)(A) by failing to conduct a reasonable investigation within 30 days of receiving Plaintiff's Dispute(s).

85.    Each Bureau violated 15 U.S.C. § 1681i (a)(2)(A) by failing to provide notice of the dispute(s) to Furnisher or, in the alternative, if each Bureau did comply with Section 1681i (a)(2)(A) then each Bureau failed to comply with Section 1681i (a)(2)(B) by failing to provide Plaintiff all relevant information received from Furnisher.

86.    Each Bureau violated 15 U.S.C. § 1681e (b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information on Plaintiff's consumer report.

87.    Furnisher's actions described herein violated 15 U.S.C. 1681s-2 (b).

88.    Notwithstanding this, Defendants continued to publish and disseminate such inaccurate information to other third parties, persons, entities and credit grantors.

89.     Furnisher continued to furnish credit data which was inaccurate and materially misleading, and each Bureau's reporting of the above-referenced tradeline(s) continued to be inaccurate and materially misleading.

90.    Defendants knew the information was inaccurate.

91.    At minimum, Defendants demonstrated a reckless disregard for the true facts.

92.    These actions by Defendants caused extensive damage to Plaintiff.

Damages

93.    As a result of Defendants' failure to comply with the FCRA, Plaintiff has been damaged.

94.    Defendants' erroneous reporting affected Plaintiff's reputation, creditworthiness, and credit score.

95.    Plaintiff suffered damage to his reputation as it falsely appeared as if he was deceased.

96.    A deceased person is unable to obtain credit.

97.    A deceased person does not have a credit score.

98.    This falsity was published to numerous third-parties.

99.    This negative information reflected poorly upon Plaintiff and is incompatible with the proper exercise of Plaintiff's financial affairs.

100.    Plaintiff has, inter alia, suffered damage by loss of time and money in trying to rectify Defendants' willful and negligent actions, inability to purchase necessary medications, physical and emotional pain due to lack of medications, loss of credit, loss of ability to purchase and benefit from credit, reputational harm, decreased (or complete lack of) credit score, a chilling effect on applications for credit, and the mental and emotional pain, anguish, humiliation, and embarrassment for having false information on his credit report, for credit denial, and for having others see the false credit information.

101.    At many times during this ordeal, Plaintiff did not have a credit score or credit report.

102.    A lack of credit score or report here is because Plaintiff was marked as deceased.

103.    Plaintiff was denied funding opportunities due to Defendants' actions.

104.    Due to each of Defendants' action, Plaintiff was unable to secure the necessary credit.

105.    Plaintiff was denied credit including multiple credit cards, financing, and personal loans, due in whole or in part to Defendants' actions.

106.    When Plaintiff applied for funding for an Apple Card from Goldman Sachs Bank USA, he was denied funding because he had "No credit score" from Trans Union.

107.    When Plaintiff applied for funding from PenFed Credit Union, he was denied funding because they were "unable to obtain a credit file" from Equifax.

108.    When Plaintiff applied for funding from Chase, he was denied funding because they were "Unable to obtain a Credit score" from Experian.

109.   When Plaintiff applied for funding from Capital One, he was denied because "applicant is reported as deceased" by the Bureaus.

110.   When Plaintiff applied for funding from Digital Federal Credit Union, he was denied because, "CREDIT SCORE NOT AVAILABLE" from Equifax.

111.   When Plaintiff applied for funding from Upgrade, he was denied because they were "Unable to find credit profile at bureau" from Trans Union.

112.   Plaintiff believes he was further denied credit on other occasions due in whole or in part, to Defendants' actions.

113.   Plaintiff was emotionally distraught and damaged, and had difficulty with sleep.

114.   Plaintiff suffers from medically diagnosed emotional issues, which is physician noted has been exacerbated by the issues raised herein.

115.   Being reported as deceased increases a person's levels of stress and anxiety.

116.   Having multiple multi-billion-dollar corporations refuse to acknowledge you are very much alive, while they recklessly continue to report you as deceased, increases anxiety and stress to even greater, unbearable, levels.

117.   Plaintiff also suffers from physical health issues requiring medication.

118.   Plaintiff was unable to obtain medications for his condition due to Defendants' actions.

119.   When Plaintiff applied for funding for his medication through Klarna, he was denied because "[score missing]" from Trans Union.

**FIRST CAUSE OF ACTION**
**(Violations of the FCRA as to each Bureau)**

120.   Plaintiff incorporates the allegations above the First Cause of Action as if set forth here.

121.   This is an action for willful and/or negligent violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.

122.    Each Bureau violated 15 U.S.C. § 1681e (b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files that each Bureau maintained or furnished concerning the Plaintiff.

123.    Each Bureau violated 15 U.S.C. § 1681i (a)(1)(A) by failing to conduct a reasonable investigation and delete the disputed tradeline within 30 days of receiving Plaintiff's dispute(s) and by failing to maintain reasonable procedures with which to verify the disputed information in Plaintiff's credit file.

124.    Each Bureau violated 15 U.S.C. § 1681i (a)(2)(A) by failing to provide notice of the Dispute to Furnisher or, in the alternative, if each Bureau did comply with Section 1681i (a)(2)(A) then it failed to comply with Section 1681i (a)(2)(B) by failing to provide Plaintiff all relevant information received from Furnisher.

125.    Each Bureau has willfully and recklessly, or in the alternative negligently, failed to comply with the Act.

126.    The failure of each Bureau to comply with the Act include but is not necessarily limited to:

        a)  The failure to follow reasonable procedures to assure the maximum possible accuracy of the information reported;

        b)  The failure to remove and/or correct the inaccuracy and derogatory credit information after a reasonable request by the Plaintiff;

        c)  The failure to promptly and adequately investigate information which each Bureau had notice was inaccurate;

        d)  The continual placement of inaccurate information into the credit report of the Plaintiff after being advised by the Plaintiff that the information was inaccurate;

        e)  The failure to promptly delete information that was found to be inaccurate, or could not be verified, or that the source of information had advised each Bureau to delete;

f) The failure to take adequate steps to verify information each Bureau had reason to believe was inaccurate before including it in the credit report of the consumer; and

g) The failure to provide notice of a dispute to the Furnisher or, in the alternative, the failure to provide Plaintiff all relevant information received from the Furnisher in response to a dispute.

127.  As a result of the conduct, action and inaction of each Bureau, Plaintiff suffered damage as described above.

128.  The conduct, action and inaction of each Bureau was willful rendering each Bureau liable for actual, statutory and punitive damages in an amount to be determined by a judge and/or jury pursuant to 15 U.S.C. § 1681n.

129.  In the alternative, the conduct, action, and inaction of each Bureau was negligent, entitling the Plaintiff to damages under 15 U.S.C. § 1681o.

130.  Plaintiff is entitled to recover reasonable costs and attorney's fees from each Bureau in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n-1681o.

131.  WHEREFORE, Plaintiff demands judgment for damages together with attorney's fees and court costs pursuant to 15 U.S.C. §§ 1681n-1681o.

## SECOND CAUSE OF ACTION
### (Violations of the FCRA as to Furnisher)

132.  Plaintiff incorporates the allegations above the First Cause of Action as if set forth here.

133.  This is an action for willful and/or negligent violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.

134.  Pursuant to the Act, all persons who furnished information to reporting agencies must participate in re-investigations conducted by the agencies when consumers dispute the accuracy and completeness of information contained in a consumer credit report.

135.    Pursuant to the Act, a furnisher of disputed information is notified by the reporting agency when the agency receives a notice of dispute from a consumer such as the Plaintiff.

136.    The furnisher must then conduct a timely investigation of the disputed information and review all relevant information provided by the agency.

137.    The results of the investigation must be reported to the agency and, if the investigation reveals that the original information is incomplete or inaccurate, the furnisher must report the results to any other agencies which were supplied such information.

138.    Furnisher violated 15 U.S.C. § 1681s-2 (b) as described above, including, but not limited to, failing to fully and properly investigate the disputes of the Plaintiff, failing to review all relevant information regarding same, and failing to correctly report results of an accurate investigation to the credit reporting agencies.

139.    Furnisher continued to report this information on the Plaintiff's credit report after being notified of his dispute(s) regarding the Account as described above.

140.    As a result of the conduct, action, and inaction of Furnisher, Plaintiff suffered damage as described above.

141.    The conduct, action, and inaction of Furnisher was willful, rendering it liable for actual, statutory and punitive damages in an amount to be determined by a jury pursuant to 15 U.S.C. § 1681n.

142.    In the alternative, the conduct, action, and inaction of Furnisher was negligent, entitling the Plaintiff to damages under 15 U.S.C. § 1681o.

143.    Plaintiff is entitled to recover reasonable costs and attorney's fees from each Furnisher in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n-1681o.

144.    WHEREFORE, Plaintiff demands judgment for damages, together with attorney's fees and court costs pursuant to 15 U.S.C. §§ 1681n-1681o.

## DEMAND FOR TRIAL BY JURY

145.    Plaintiff demands and hereby respectfully requests a trial by jury for all claims and issues in this complaint to which Plaintiff is or may be entitled to a jury trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment from each Defendant as follows:

a) Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class representative, and Eliyahu Babad, Esq., as Class Counsel;

b) For actual damages provided and pursuant to 15 U.S.C. § 1681(o)(a) be awarded for each negligent violation as alleged herein;

c) For actual damages provided and pursuant to 15 U.S.C. § 1640(a)(1);

d) For statutory damages provided and pursuant to 15 U.S.C. § 1681n(a);

e) For statutory damages provided and pursuant to 15 U.S.C. § 1640(a)(2);

f) For Punitive damages provided and pursuant to 15 U.S.C. § 1681n(a)(2);

g) For attorney fees and costs provided and pursuant to 15 U.S.C. § 1681n(a)(3), 15 U.S.C. § 1681o(a)(2) and 15 U.S.C. § 1640(a)(3);

h) For any such other and further relief, as well as further costs, expenses and disbursements of this action as this Court may deem just and proper.

Dated:  July 21, 2023

**STEIN SAKS, PLLC**

By:    s/ Eliyahu Babad
       Eliyahu Babad
       One University Plaza, Suite 620
       Hackensack, NJ 07601
       (201) 282-6500 x121
       EBabad@SteinSaksLegal.com

       *Attorney for Plaintiff*